Argued and submitted December 13, 1994, reversed and remanded for
reconsideration of waiver issue April 12, 1995

In the Matter of the Compensation of
Connie M. Johnson, Claimant.

# WRIGHT SCHUCHART HARBOR
and St. Paul Fire and Marine
Insurance Company,
*Petitioners,*

*v.*

# Connie M. JOHNSON,
*Respondent.*

# (WCB 92-06467; CA A83744)

893 P2d 560

Craig Creel argued the cause and filed the brief for petitioners.

James L. Edmunson argued the cause and filed the brief for respondent.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Employer petitions for review of an order of the Workers' Compensation Board that sets aside employer's denial of compensability to the extent that it denied the compensability of surgery to repair claimant's knee condition. Employer contends that the Board improperly considered the medical services issue because claimant had previously waived any medical services claim. We reverse and remand for reconsideration.

Claimant originally injured her left knee in a nonwork-related incident in 1977. In April 1990, she compensably reinjured her left knee. Her treating physician diagnosed a torn posterior horn of the medial meniscus and performed arthroscopic surgery to repair that problem and to remove an anterior cruciate ligament tag. In January 1991, the claim closed, and claimant was awarded a 20 percent scheduled permanent disability.

A year later, claimant began to experience more pain, swelling, and instability in her knee, and her doctor recommended either further conservative care or additional anterior cruciate ligament surgery. Claimant requested authorization for surgery. Employer's insurer required claimant to attend an independent medical examination. The examining physician opined that the 1977 nonwork-related knee injury, rather than claimant's April 1990 on-the-job injury, was the major contributing cause of her current need for surgery. Based on that opinion, employer's insurer denied claimant's request for authorization.

Claimant sought a hearing before a workers' compensation referee by submitting a standard "Request for Hearing" form. On that form, she checked the boxes corresponding to seven of the 17 listed reasons for requesting a hearing, including the boxes for "aggravation" and "medical services."

At the beginning of the hearing, the following colloquy occurred among the referee, claimant's attorney (Alvey), and employer's attorney (Creel):

"REFEREE:   * * * Concerning the issues in this case, I understand that the sole issue in this proceeding is the compensability of an alleged aggravation. Is that correct, Mr. Alvey?

"MR. ALVEY: That's correct.

"REFEREE: And Mr. Creel, is that your understanding?

"MR. CREEL: That is my understanding.

"REFEREE: Okay. And there's no cross-issues by the insurer?

"MR. CREEL: There are none.

"MR. ALVEY: Should claimant prevail, we would, of course, ask for a carrier-paid fee also.

"REFEREE: All right. I consider that part and parcel of an aggravation and not as a separate issue, but I appreciate you indicating that on the record."

Thereafter, neither claimant's nor employer's counsel made any reference to the compensability of medical services, specifically including any assertion that, regardless of whether claimant proved an aggravation, she was entitled under ORS 656.245 to the additional knee surgery as medical services that were materially related to her 1990 compensable injury. The parties' evidentiary and legal submissions focused solely on the aggravation issue and, specifically, on whether, given claimant's preexisting 1977 knee condition, the compensable April 1990 injury was the major contributing cause of her worsened condition. The referee upheld the insurer's denial on the ground that claimant had not proved the requisite causal connection between her compensable knee injury and her worsened condition.

The Workers' Compensation Board affirmed and adopted that order, but stated:

"By agreeing with the Referee's conclusion that claimant has failed to prove a compensable aggravation claim, we do not mean to suggest that claimant cannot assert a valid medical services claim under ORS 656.245. *See Beck v. James River Corporation*, [124 Or App 484, 863 P2d 526 (1993), *rev den* 318 Or 478 (1994)]."

Claimant moved for abatement and reconsideration of that order, arguing that she had proved a valid medical services claim under ORS 656.245, and asked that the Board enter an order stating that her need for surgery was compensable under the analysis of *Beck*. Employer opposed that motion, arguing that, because aggravation was the sole issue litigated

at hearing, the Board should decline to address whether claimant had proved an entitlement to medical services on any other basis.

In its order on reconsideration, the Board rejected employer's waiver contention:

"We acknowledge that claimant's attorney agreed with the Referee's statement at hearing that the sole issue in the proceeding concerned aggravation. Without an express declaration, however, that claimant no longer wished to pursue the medical services issue, we find that she did not waive that question."

Proceeding to the merits, the Board decided that claimant had proved a compensable medical services claim "because claimant's 1990 injury bears a causative relationship to [claimant's] need for surgery."

Employer first assigns error to the Board's determination that claimant had not waived her right, under ORS 656.245, to seek compensation for medical services relating to her 1990 injury. Employer argues that claimant's counsel's response to the referee bears only one reasonable construction: Claimant had narrowed her claim exclusively to aggravation and was abandoning all other issues she had previously raised in her request for hearing, including medical services other than those based on aggravation. Thus, employer reasons, counsel's statements expressed and effected a waiver and precluded claimant from later raising the medical services issue, including before the Board. Claimant responds that her counsel was "at most silent" with respect to the medical services issue, that mere silence cannot be construed as a waiver, and that the Board had complete authority to consider the issue because the record was fully developed with respect to that issue.

In advancing their arguments, both parties indiscriminately equate the legal principles pertaining to *waiver* with those pertaining to an adjudicative body's authority to decide issues *not raised* in the antecedent proceedings. Although the two may overlap in particular cases, they exist for decidedly different reasons and should not be treated as freely interchangeable. Waiver is primarily a principle that addresses litigants' rights *inter se*; it seeks to give effect to a

party's intentional and voluntary commitment to forgo some right. *Waterway Terminal v. P.S. Lord*, 242 Or 1, 26, 406 P2d 556 (1965). Conversely, limitations on an appellate body's ability to address previously unasserted claims or arguments, which are generally couched in terms of "preservation," arise primarily from jurisprudential concerns, *i.e.*, "to promote an efficient administration of justice and the saving of judicial time" and fairness in the process. *Shields v. Campbell*, 277 Or 71, 78, 559 P2d 1275 (1977).

■ ■    Because of those differences in purpose, a party's waiver of a claim precludes that party from later asserting that claim, regardless of whether, as a prudential matter, the adjudicative body could otherwise have addressed the claim in the first instance. Just as a waiver binds a litigant at trial or at hearing, it continues to be binding on appeal or administrative review. *Accord State v. Maestas*, 113 Or App 744, 746, 833 P2d 1348 (1992) (even if court had discretion to reach unpreserved error because it was apparent on the face of the record, court would not review that error because defendant's failure to preserve was a tactical decision). Thus, regardless of the Board's discretion to reach and decide issues not raised in the first instance before a referee,[1] if claimant did, in fact, waive the medical services claim before the referee, she was barred from asserting that claim on reconsideration, and the Board erred in determining that claim.[2]

■ ■    We turn, then, to the Board's determination that claimant did not waive her right to assert a medical services claim based on the 1990 injury. Waiver is "the intentional relinquishment of a known right." *Drews v. EBI Companies*, 310 Or 134, 150, 795 P2d 531 (1990); *Cravens v. SAIF*, 121 Or App 443, 447, 855 P2d 1129 (1993). Waiver must be plainly and unequivocally manifested, either "in terms or by such

---

[1] Employer's brief to this court asserted that, even if claimant did not waive the medical services issue, the Board erred in reaching "a completely new issue * * * which was * * * never touched upon at hearing on reconsideration." However, at oral argument, employer's counsel withdrew that argument: "I don't think it is germane to the issues before us, nor do I think that recent case law is in support of that contention * * *." Accordingly, we need not address the contours and breadth of the Board's discretion to address issues raised for the first time on reconsideration. *See generally Rice v. Columbia Steel Casting*, 129 Or App 82, 877 P2d 672 (1994).

[2] No party contends that, in the absence of some assertion by claimant, the Board could *sua sponte* adjudicate an entitlement to medical services.

conduct as clearly indicates an intention to renounce a known privilege or power." *Great American Ins. v. General Ins.*, 257 Or 62, 72, 475 P2d 415 (1970). *See also Brown v. Portland School Dist. #1*, 291 Or 77, 84, 628 P2d 1183 (1981) ("To make out a case of waiver of a legal right there must be a clear, unequivocal, and decisive act of the party showing such a purpose[.]'").

■ ■    In general, the question of whether a waiver has occurred is resolved by examining the particular circumstances of each case. *State v. Meyrick*, 313 Or 125, 132, 831 P2d 666 (1992). Here, however, the Board did not engage in such an inquiry. Although it did acknowledge claimant's counsel's statements before the referee, the Board did not consider whether, as a factual matter, those remarks actually evinced and expressed an intent to relinquish a known right. Instead, the Board simply stated that in the absence of "an express declaration * * * that claimant no longer wished to pursue the medical services issue," it would not find a waiver. That "bright line" requirement of an explicit disclaimer, which was not related to the parties' particular circumstances, embodies a legal conclusion, and we review it for legal error. ORS 183.482(8)(a).

■    In general, waiver may be either explicit or implicit, that is, implied from a party's conduct. *See Powell v. Goff*, 126 Or App 194, 198, 868 P2d 26 (1994). Consequently, an explicit disclaimer is ordinarily not a prerequisite for an enforceable waiver. *But see State v. Grenvik*, 291 Or 99, 102, 628 P2d 1195 (1981) (waiver will not be presumed from a silent record). The issue thus reduces to whether the Board erred in deviating from that general, but not absolute, principle by requiring an explicit disclaimer in this case. We conclude that it did.

Our holding turns on the fundamental relationship between medical services and aggravation under the workers' compensation statutes. Under ORS 656.245, a claimant may seek medical services either for an initial compensable condition or for a compensable worsening of such a condition.[3]

---

[3] ORS 656.245(1)(a) provides:

"For every compensable injury, the insurer or the self-insured employer shall cause to be provided medical services for conditions resulting from the

Moreover, under ORS 656.273, a claim for aggravation may, but need not, encompass a request for medical services.[4] Thus, in the most elementary terms, some, but not all, requests for medical services are based on aggravation claims, and some, but not all, aggravation claims involve requests for medical services. The two are not congruent.

Here, claimant clearly asserted an entitlement to medical services based on an alleged aggravation. Thus, counsel's agreement that the sole issue at hearing was "aggravation" did not preclude an entitlement to medical services on that basis; the former subsumed the latter. However, claimant failed to prove the predicate aggravation, and does not seek review of that determination.

Conversely, claimant's counsel's agreement that the sole issue was aggravation could, depending on the circumstances, be viewed as impliedly limiting claimant from recovering medical services on any basis other than aggravation. We discern no reason why such an implied waiver — if waiver it was — should be deemed ineffective as a matter of law because it did not refer explicitly to a request for medical services based on the 1990 injury. Nor did the Board identify any special consideration of workers' compensation policy or practice compelling such an absolute requirement.

Stripped of its erroneous legal premise that claimant was required to explicitly disavow any entitlement to medical services based on the 1990 injury, the Board's order lacks "an ordered set of findings of fact and is devoid of any explanation of why facts supported by evidence lead to its conclusion" that claimant did not waive her right to assert that, regardless of the disposition of her aggravation claim, the proposed knee surgery was nonetheless compensable. *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 207, 752 P2d 312 (1988). Ultimately,

injury for such period as the nature of the injury or the process of the recovery requires, including such medical services as may be required after a determination of permanent disability."

[4] ORS 656.273(1) provides, in part:

"After the last award or arrangement of compensation, an injured worker is entitled to additional compensation, including medical services, for a worsened condition resulting from the original injury."

the meaning and effect of claimant's counsel's statements — *i.e.*, whether claimant actually intended to waive a known right to assert a claim for medical services — must be ascertained from the totality of the circumstances. We remand to the Board for such a determination.

Reversed and remanded for reconsideration.