Submitted March 12, affirmed May 26, 2021

Nicole CEASER
and Happy Valley Children's Garden, LLC,
*Petitioners,*

*v.*

DEPARTMENT OF HUMAN SERVICES,
*Respondent.*

Department of Human Services
TJS00015; A171908

493 P3d 66

Petitioners, child-care providers for low-income families, seek judicial review of a Department of Human Services (DHS) final order. In its order, DHS suspended petitioners from receiving employment related day care subsidy payments for a period of six months, pursuant to former OAR 461-165-0180(3)(c) (Jan 24, 2019), renumbered as OAR 461-165-0180(3)(d) (Oct 1, 2019), after determining that petitioners had failed to comply with a condition of eligibility under OAR 461-165-0180(8)(h)(B). On judicial review, petitioners raise four assignments of error. First, they argue that DHS erred in concluding that they had been provided proper notice of the suspension. Second, they assert that DHS erred in concluding that a Notice of Awareness that DHS sent to petitioners following the initial suspension did not waive DHS's suspension rights. Third, they argue that relevant provisions of OAR 461-165-0180 are unconstitutionally vague. Lastly, they request plain-error review of their argument that OAR 461-165-0180(8)(h)(B) exceeds DHS's rule-making authority. *Held*: DHS did not err when it adopted the administrative law judge's proposed order in full, concluding that petitioners had been provided with adequate notice of the suspension, that DHS had not waived its suspension rights when it sent the Notice of Awareness, and that various provisions of OAR 461-165-0180 were not unconstitutionally vague. The Court of Appeals declined to exercise its discretion to consider petitioners' plain-error argument.

Affirmed.

Vivien Lyon filed the briefs for petitioners.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Inge D. Wells, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

SHORR, J.

Affirmed.

**SHORR, J.**

Petitioners, child-care providers for low-income families, seek judicial review of a Department of Human Services (DHS) final order. In its order, DHS suspended petitioners from receiving employment related day care (ERDC) subsidy payments for a period of six months, pursuant to *former* OAR 461-165-0180(3)(c) (Jan 24, 2019), *renumbered as* OAR 461-165-0180(3)(d) (Oct 1, 2019),[1] after determining that petitioners had failed to comply with a condition of eligibility under OAR 461-165-0180(8)(h)(B). On judicial review, petitioners raise four assignments of error. First, they argue that DHS erred in concluding that they had been provided proper notice of the suspension. Second, they assert that DHS erred in concluding that a Notice of Awareness that DHS sent to petitioners following the initial suspension did not waive DHS's suspension rights by providing a 60-day period for petitioners to "come into compliance." Third, they argue that relevant provisions of OAR 461-165-0180 are unconstitutionally vague. Lastly, they request plain-error review of their argument that OAR 461-165-0180(8)(h)(B) exceeds DHS's rule-making authority. For the reasons that follow, we reject all of petitioners' assignments of error, and therefore affirm.

Under the Administrative Procedures Act, ORS 183.310 to 183.690, "[r]eview of a contested case shall be confined to the record, and the court shall not substitute its judgment for that of the agency as to any issue of fact or agency discretion." ORS 183.482(7). We review an agency's order to determine if it is "supported by substantial evidence in the record." ORS 183.482(8)(c). Accordingly, we recite the relevant facts from DHS's final order, which adopted an administrative law judge's (ALJ's) proposed order in its entirety, and the relevant evidence from the record.

Petitioners Happy Valley Children's Garden, LLC (Happy Valley) and its owner Nicole Ceaser are child-care providers licensed by the DHS Office of Child Care. They

---

[1] At the time petitioners were first suspended, the provision of OAR 461-165-0180 pertaining to suspended providers was contained in paragraph (3)(c). That provision has since been renumbered to (3)(d). All subsequent references to the suspended provider provision refer to the January 24, 2019, version, which was in effect when petitioners were first placed on suspended status.

operate two separate facilities in Portland. In October 2017, Happy Valley applied for listing with ERDC as an approved child care provider.[2] That application process was completed by a then-director at one of the Happy Valley sites, and required that petitioners agree to various terms, including the requirement that petitioners report any involvement with Child Protective Services (CPS) to the Direct Pay Unit (DPU) within five days of that involvement. Happy Valley was approved for ERDC listing, and petitioners subsequently enrolled ERDC-eligible children and received ERDC subsidy payments directly from DPU. All of the nearly 110 children enrolled at the Stark Street location received ERDC subsidies as of April 2019.

DHS's administrative rules require ERDC-approved providers to report to DPU within five days "[a]ny involvement of any subject individual or individual described in section (5) of this rule with CPS or any other agencies providing child or adult protective services." OAR 461-165-0180(8)(h)(B). The term "subject individual" is defined to mean any individual who is subject to a criminal record check by an administrative agency. OAR 125-007-0210(10). All Happy Valley employees are subject to a background check requirement.

In January 2018, DHS mailed petitioners a Child Care Provider Notice of Awareness, informing them that they had failed to report two instances of CPS contact in August and December 2017 to the DPU within five days of those occurrences. That notice explained the DPU reporting requirements and warned that failure to report such contacts "may result in a suspend[ed] status [for] a minimum of six months and [ineligibility] for subsidy payments from the ERDC program." DHS did not impose any sanction at that time. Ceaser claims to have never received that notice.

On November 5, 2018, CPS began investigating petitioners in response to an allegation of abuse at the Stark Street facility. CPS spoke to a director at that facility as part of the investigation, and ultimately determined that the allegation was "unfounded." Petitioners did not report

---

[2] ERDC is a DHS program that helps low-income working families pay the cost of child care. *See* OAR 461-101-0100(8).

that involvement with CPS to DPU within five days, in violation of ERDC program requirements. On January 25, 2019, DHS sent petitioners a notice via regular mail placing Happy Valley in suspended status and immediately suspending its ERDC child care provider payments for a six-month period for violating that DPU reporting requirement. However, shortly after the suspension was initiated, petitioners requested a contested-case hearing, and DHS agreed to reinstate petitioners' eligibility for payments pending that hearing and final resolution of the matter. On February 15, 2019, DHS sent petitioners another Child Care Provider Notice of Awareness, which stated, in part:

> "The purpose of this letter is to provide additional clarifying information regarding the DHS Child Care Provider suspended status rule. Information previously shared by the Direct Pay Unit (DPU) may not have accurately conveyed the parameters of [*former*] OAR 461-165-0180 (3)(c)(B)(i) to (iii). After reviewing with DPU, we wanted to ensure you are aware of the rule and associated parameters of a suspended provider. DHS is allowing a 60-day window to support compliance with this rule."

The notice went on to clarify the provisions of *former* OAR 461-165-0180(3)(c)(B)(i) to (iii), including that, when a provider is in suspended status, DHS will not pay "any other child care provider" for child care at the suspended site, and that DHS will not pay for child care at a suspended provider's second location unless DHS determines that the reasons for the suspension are unrelated to the second location. One week later, on February 22, 2019, DHS issued an amended notice of suspension, delaying petitioner's placement in suspended status until April 15, 2019, after the scheduled contested-case hearing.[3] That notice informed petitioners that they were "being placed in a suspended status as a Department of Human Services (DHS) child care provider **starting 04/15/2019**, and will no longer [be] eligible for subsidy payments for providing child care." (Boldface in original.)

---

[3] The amended notice of suspension made no mention of the scheduled contested-case hearing. However, the date for the hearing had been set two days prior, and the document scheduling that hearing had been electronically served on a DHS representative at that time. Therefore, we infer that DHS was aware of the scheduled hearing date when they sent the amended notice of suspension.

A contested-case hearing was held on April 11, 2019, before an ALJ from the Office of Administrative Hearings. Petitioners raised several legal challenges but did not contest the allegation that they failed to report their November CPS contact to DPU. Buss, the DHS analyst who sent the various mailings at issue and made the decision to suspend petitioners, testified that she considered petitioners' "history of failures to comply" in reaching her decision to suspend petitioners for the November 2018 failure to report. Buss also testified to her reasons for sending the February 15, 2019, Notice of Awareness. She stated that the purpose of the notice was to "inform the provider about how a suspension would work when there's multiple sites."

> "This is not meant to be a second chance of compliance. This notice was just to inform them that if an action is taken against one of the locations that *** any other site the provider is involved in in regards to care cannot be conducted while in suspen[ded] status, so it's not a secondary chance."

The ALJ found that petitioners had "failed to meet the requirement of OAR 461-165-0180(8)(h)(B) when [they] failed to report [their] involvement with CPS within five days to the DPU." (Footnotes omitted.) The ALJ also rejected petitioners' legal challenges to the imposition of the suspension. First, the ALJ rejected petitioners' arguments that DHS had provided insufficient notice of the suspension and concluded that those arguments were "unpersuasive" because "the suspension applied to both of Claimant's child care provider numbers" or locations and "the Department served notice via regular mail, which *** is permissible per ORS 411.103(1)." Next, the ALJ rejected petitioners' arguments that certain sections of OAR 461-165-0180 were unconstitutionally vague. The ALJ credited DHS's interpretation of the term "[a]ny involvement" in OAR 461-165-0180(8)(h)(B) as meaning "any contact between a provider and CPS." The ALJ also rejected petitioners' other vagueness arguments, concluding that, "[a]lthough the regulation is broad, it does not afford the Department any discretion in its application. Neither does the regulation rely on 'shifting or subjective judgments' of the Department, nor is it so poorly written as to fail to provide fair warning of the conduct it prohibits." In

regards to petitioners' argument that the February Notice of Awareness waived DHS's suspension rights, the ALJ concluded that that argument was "unpersuasive because, although the letter afforded Claimant additional time to become compliant with OAR 461-165-0180, nowhere in the letter does it state that the Department would not suspend Claimant after the 60 days expired." Having disposed of those legal arguments, the ALJ ruled that, "[p]ursuant to [*former*] OAR 461-[165]-0180(3)(c)(B)(i), claimant is ineligible for child care provider payments for a period of at least six months." Petitioners filed exceptions to that proposed order. After considering those exceptions, DHS rejected them and adopted the ALJ's entire proposed order as its final order.

On judicial review, petitioners first assert that DHS failed to provide them with proper notice of the suspension. We review DHS's legal conclusions, including the adequacy of DHS's notice, for legal error. *See* ORS 183.482(8)(a); *Villanueva v. Board of Psychologist Examiners*, 175 Or App 345, 355-58, 27 P3d 1100 (2001), *adh'd to on recons*, 179 Or App 134, 39 P3d 238 (2002). Specifically, petitioners argue that DHS did not have jurisdiction to impose the suspension under ORS 183.415(2) because the original suspension letter failed to properly identify which of petitioners' child-care locations were being suspended. Although DHS concluded that the suspension applies to both of petitioners' locations, petitioners assert that DHS erred in reaching that conclusion. Additionally, petitioners argue that the suspension letter violated ORS 183.415(2) because it was not personally served or sent by certified or registered mail, but instead was sent through first class mail. With regard to DHS's conclusion that ORS 411.103(1) permitted notice by first class mail, petitioners allege that DHS ignored their argument that ORS 411.103(1) could not apply because "the notice did not contain a short, plain statement of the matters asserted or charged, as required by ORS 183.415(3)(d)." In response, DHS contends that the original suspension letter provided adequate notice and complied with ORS 183.415, and that ORS 411.103(1) permitted notice by regular mail in this case. DHS also claims that petitioners never advanced an argument below that the suspension letter did not comply with ORS 183.415(3)(d).

We first address, and reject, petitioner's argument that the original suspension letter provided insufficient notice because it did not clarify which facility was being suspended. *Former* OAR 461-165-0180(3)(c)(B)(iii) states that "[t]he Department *does not pay a child care provider at another site* if the 'suspended' provider is involved in the child care operation *unless* the Department determines that the reasons the provider is in 'suspended' status are not relevant to the new site." (Emphases added.) Because the default operation of *former* OAR 461-165-0180(3)(c)(B)(iii) is that a suspension will apply to all sites a suspended provider is involved in unless that specific determination is made, the suspension letter in this case did not provide deficient notice merely because it did not specify a certain Happy Valley location or provider number. Therefore, DHS's letter provided sufficient notice that the suspension applied to both locations and DHS did not err in concluding that the suspension applied to both Happy Valley locations.

Petitioners' other notice arguments also fail. ORS 183.415 requires that, "[i]n a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice, served personally or by registered or certified mail" and notice must include "[a] short and plain statement of the matters asserted or charged[.]" ORS 183.415(2), (3)(d). However, ORS 411.103(1) provides that DHS "may serve a notice described in ORS 183.415 by regular mail." Contrary to DHS's assertion, petitioners did preserve their argument that the notice lacked "a short and plain statement of the matters asserted or charged" when they raised that argument in both their amended hearing memorandum and their written closing arguments. DHS responded to that argument in the agency's own written closing argument. Regardless, the argument is without merit because the suspension letter complied with ORS 183.415(3)(d) and ORS 411.103(1). The suspension letter articulated, "Records indicate you or a subject individual had involvement with CPS or other agencies providing child or adult protective services, on 11/05/2018, which was not reported to DPU within five days of the occurrence." Although that allegation could have provided additional details, the inclusion of the exact date and a description of the circumstances

alleged provides adequate information to comply with ORS 183.415(3)(d). *See, e.g.*, *Sachdev v. Oregon Medical Board*, 292 Or App 778, 793, 426 P3d 118 (2018) (allegations in Oregon Medical Board complaint were sufficient under ORS 183.415(3)(d) where complaint alleged that, on a specific date, licensee had text-messaged a patient and clinic staff in violation of an interim order, even though allegations did not identify the patient or staff involved). Petitioners make no argument that the defects they perceive in the suspension letter prevented them from preparing an adequate defense. *See id.* at 785 (explaining that the primary purpose of the notice requirement is to allow the party an "opportunity to prepare an adequate defense"). Absent such an argument, we readily conclude that the suspension letter provided adequate notice and complied with both ORS 183.415 and ORS 411.103(1).

Further, we reject petitioners' argument that DHS's order was deficient because it purportedly did not directly address petitioners' argument that the suspension letter failed to include a "short and plain statement of the matters asserted or charged." DHS necessarily rejected that legal argument in concluding that the notice in this case could be served by regular mail under ORS 411.103(1). As noted, ORS 411.103(1) allows DHS to serve a notice by regular mail if it is "a notice described in ORS 183.415."

We turn to petitioners' second assignment of error. Petitioners argue that DHS erred in concluding that the February 15, 2019, Child Care Provider Notice of Awareness did not "provide an opportunity for Appellant to come into compliance and avoid the suspension." We review an agency's factual findings for substantial evidence, asking whether the record, viewed as a whole, would permit a reasonable person to make that finding. ORS 183.482(8)(c). Petitioners argue, as they did at the contested-case hearing, that the Notice of Awareness afforded them a "grace period, at the end of which, given compliance, Petitioners would no longer face the threatened consequences of noncompliance." Petitioners contend that the notice's statement that DHS was "allowing a 60-day window to support compliance with this rule" referred to petitioners' compliance with "the

broader provisions of OAR 461-165-0180, including making timely reports related to involvement with CPS." Petitioners point to evidence in the record that they complied with OAR 461-165-0180 "to the best of their understanding and ability" during the 60-day period. Petitioners cite no regulation, statute, or case law in support of their argument, but contend that, "[g]iven the uniqueness of the circumstance, there is no applicable regulation, statute or case law to cite." In response, DHS contends that substantial evidence in the record supports DHS's determination that the notice did not waive its suspension rights, because "there was no evidence in the record suggesting that by agreeing to delay the suspension, the department intended to waive it."

Waiver is "'the intentional relinquishment of a known right.'" *Drews v. EBI Companies*, 310 Or 134, 150, 795 P2d 531 (1990) (quoting *Brown v. Portland School Dist. #1*, 291 Or 77, 84, 628 P2d 1183 (1981)). "Waiver must be plainly and unequivocally manifested, either 'in terms or by such conduct as clearly indicates an intention to renounce a known privilege or power.'" *Wright Schuchart Harbor v. Johnson*, 133 Or App 680, 685-86, 893 P2d 560 (1995) (quoting *Great American Ins. v. General Ins.*, 257 Or 62, 72, 475 P2d 415 (1970)). The question of whether a waiver has occurred is answered by examining the particular circumstances of each case. *Wright Schuchart Harbor*, 133 Or App at 686.

Applying that law, we consider whether substantial evidence in the record supported DHS's conclusion that the February Notice of Awareness did not constitute a plain and unequivocal manifestation of DHS's intention to relinquish its right to suspend petitioners' ERDC payments. The Notice of Awareness began by saying:

> "The purpose of this letter is to provide additional clarifying information regarding the DHS Child Care Provider suspended status rule. Information previously shared by the Direct Pay Unit (DPU) may not have accurately conveyed the parameters of [*former*] OAR 461-165-0180 (3)(c)(B)(i) to (iii). After reviewing with DPU, we wanted to ensure you are aware of the rule and associated parameters of a suspended provider."

The plain and unequivocal meaning of that text is that the notice is intended to provide information about the suspended provider rule, *former* OAR 461-165-0180(3)(c)(B), due to the possibility that previously communicated information regarding that particular rule may not have been accurate. That meaning is consistent with the testimony of Buss, who stated that the notice "was generated to provide information" about the mechanics of the suspended provider rule, *former* OAR 461-165-0180(3)(c)(B), and, in particular, *former* OAR 461-165-0180(3)(c)(B)(iii), a provision that applies to providers like Happy Valley who receive ERDC payments at multiple locations.

The next sentence in the Notice of Awareness, "DHS is allowing a 60-day window to support compliance with this rule," is admittedly potentially confusing. *Former* OAR 461-165-0180(3)(c)(B) outlines how DHS proceeds when a provider is suspended; it contains no provisions that require action or compliance on a provider's part. However, that single ambiguous sentence does not transform the notice into a plain and unequivocal manifestation of DHS's intention to relinquish its suspension rights. The remainder of the letter explains the provisions of *former* OAR 461-165-0180(3)(c)(B) and directs the reader to the Child Care Provider Guide for more information. The notice makes no mention whatsoever of the wider provisions of OAR 461-165-0180, or OAR 461-165-0180(8)(h)(B) in particular, the provision requiring DPU reporting that had prompted petitioners' suspension. Buss's testimony that the notice was "not meant to be a second chance of compliance" and was "just to inform" petitioners about the provisions of *former* OAR 461-165-0180(3)(c)(B) is consistent with the text of the notice itself, and indicates that the sentence "DHS is allowing a 60-day window to support compliance with this rule" refers only to *former* OAR 461-165-0180(3)(c)(B) and not the wider provisions of OAR 461-165-0180.

Nothing in the wider context or circumstances of this case leads us to view the Notice of Awareness or its single ambiguous sentence in a different light. *See Bank of Eastern Oregon v. Griffith*, 101 Or App 528, 534, 792 P2d 1210 (1990) (considering circumstantial evidence in

evaluating whether a party had waived certain rights). The notice was sent three weeks after petitioners were first suspended for violating OAR 461-165-0180(8)(h)(B). Sometime shortly after petitioners were first suspended, petitioners' counsel and DHS agreed that the suspension would be delayed pending the contested-case hearing. One week after petitioners were sent the Notice of Awareness, petitioners were sent an amended notice of suspension, which explained that Happy Valley would be "placed in a suspended status * * * **starting 04/15/2019**." (Boldface in original.) Considering those facts, the wider circumstances of petitioners' communications with DHS were consistent with the text of the Notice of Awareness and indicate that DHS still intended to suspend petitioners (pending a favorable ruling at the contested-case hearing) and did not intend on relinquishing its right to suspend petitioners' ERDC payments. In light of the above, DHS's factual findings were supported by substantial evidence in the record. Considering the record as a whole, it was reasonable for DHS to conclude that the letter did not communicate DHS's intention to waive its suspension rights.

In their third assignment of error, petitioners argue that DHS erred in concluding that provisions of OAR 461-165-0180 (specifically, those requiring CPS-contact reporting and allowing DHS to suspend providers who fail to make those reports) are not unconstitutional in all applications. Relying on both the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, sections 20 and 21, of the Oregon Constitution, petitioners contend that the regulation is "so vaguely crafted as to permit arbitrary or unequal application and uncontrolled discretion," "contains unidentifiable standards or employ[s] standards that rely on the shifting and subjective judgments of the person who [is] charged with enforcing it," and is "so poorly written as to fail to provide fair warning of the conduct it prohibits." (Internal quotation marks omitted.) In response, DHS contends that petitioners have not met their burden to establish that OAR 461-165-0180 is facially unconstitutional, because such a claim requires a showing that the rule specifies no standard of conduct at all. We review DHS's determination that the rule in question is

constitutional for errors of law. *See* ORS 183.482(8)(a). As explained below, we conclude that the particular provisions of OAR 461-165-0180 at issue are not unconstitutionally vague in all possible applications.

First, petitioners contend that DHS's interpretation of the OAR 461-165-0180(8)(h)(B) requirement that providers report "[a]ny [CPS] involvement" by any "subject individual" is too broad, would require 30 to 50 contacts a week from providers like Happy Valley, and should not be entitled to deference by this court. In *State v. Krueger*, we explained that a party must show that a law is unconstitutionally vague in all possible applications to prevail on a facial vagueness challenge, and articulated that, "if we can identify conduct that the statute clearly proscribes, then it is irrelevant that the defendant is able to identify problems concerning how the statute might be applied to other conduct." 208 Or App 166, 171, 144 P3d 1007 (2006). The same general principles apply here. OAR 461-165-0180(8) dictates, in part, that "[e]ach provider must *** [r]eport to the Department's Direct Pay Unit within five days of occurrence *** [a]ny involvement of any subject individual or individual described in section (5) of this rule with CPS or any other agencies providing child or adult protective services." The regulation would at least apply where the director at a provider site receives a visit from CPS as part of that agency's investigation into an allegation of child abuse at the site. Such are the exact circumstances at issue in this case.

Petitioners also argue that *former* OAR 461-165-0180(3)(c)(A) allows DHS analysts discretion to suspend or not suspend providers based on whatever factors the analyst chooses to consider, without the aid of written guidance, allowing suspension decisions to be made based on an analyst's subjective judgments. However, *former* OAR 461-165-0180(3)(c)(A) is not unconstitutionally vague merely because it states that "[a] provider *may* be 'suspended,'" (emphasis added), thereby giving DHS analysts discretion in the decision of whether to suspend a provider or merely issue a warning, because the rule still requires that DHS determine that the provider violated one of several specific delineated eligibility requirements before a suspension may occur.

Petitioners next contend that DHS erred by not providing sufficient factual findings or reasoning in support of some of its legal conclusions rejecting petitioners' constitutional arguments. However, DHS considered and correctly rejected petitioners' constitutional arguments when it explained that the regulation does not provide DHS with "any discretion in its application. Neither does the regulation rely on 'shifting or subjective judgments' of the Department, nor is it so poorly written as to fail to provide fair warning of the conduct it prohibits."

In their final assignment of error, petitioners argue that DHS erred in enforcing OAR 461-165-0180(8)(h)(B) because that regulation exceeds DHS's delegated rule-making authority and is "not necessary to ensure full compliance with federal and state laws relating to public assistance programs and functions administered by the department," due to the fact that testimony elicited at the contested-case hearing indicated that DPU had internal mechanisms that alerted them when ERDC child care providers had CPS involvement. Petitioners concede that the argument is unpreserved but request in their reply brief that we review the issue for plain error. We decline to review that issue, because it was raised for the first time in reply briefing. *See State v. Murga*, 291 Or App 462, 468, 422 P3d 417 (2018) (declining to exercise discretion to consider an issue as plain error where that argument was raised for the first time in the appellant's reply brief).

In sum, we conclude that DHS did not err when it adopted the ALJ's proposed order in full, concluding that petitioners had been provided with adequate notice of their suspension from ERDC subsidy payments, that DHS had not waived its suspension rights when it sent the February 15, 2019, Child Care Provider Notice of Awareness, and that various provisions of OAR 461-165-0180 were not unconstitutionally vague. We decline to exercise our discretion to consider petitioners' plain error argument. In light of the above, we affirm DHS's final order.

Affirmed.